UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY P. ECKERT, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 2871 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| FREEBORN & PETERS LLP and NEAL H. LEVIN, | ) | |
| | ) | |
| Defendants. | ) | |

### **MEMORANDUM OPINION AND ORDER**

In this diversity suit, Jeffrey Eckert alleges legal malpractice and fraud against the Freeborn & Peters law firm and one of its partners, Neal Levin (together, "Levin"). Doc. 1. Levin has moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). Doc. 11. The motion is granted as to the fraud claim and denied as to the malpractice claim.

## Background

In resolving the motion to dismiss, the court assumes the truth of the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Eckert's favor, but not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Eckert's brief opposing dismissal, so long as those additional facts are "consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Orders entered and filings made in other courts are subject to judicial notice on a Rule 12(b)(6) motion. *See Cancer Found., Inc. v. Cerberus Capital Mgmt. LP*, 559 F.3d 671, 676 n.2 (7th Cir. 2009); *United States v. Stevens*, 500 F.3d 625, 628 n.4 (7th Cir. 2007). The facts are set

1

forth as favorably to Eckert as permitted by those materials. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

This case arises from a lawsuit filed in the Circuit Court of DuPage County, Illinois. Doc. 1 at ¶¶ 1, 10-11. Eckert, one of the state court defendants, was represented by an attorney named Douglas Drenk. *Id*. at ¶¶ 10, 12. The state court plaintiff, Gregory Steiner, was represented by Levin. *Id*. at ¶¶ 5, 10. Levin approached Eckert outside of Drenk's presence and persuaded him to enter into a settlement agreement with Steiner that required Eckert to pay over $700,000. *Id*. at ¶¶ 12-13. Eckert signed the settlement agreement on June 29, 2010. *Id*. at ¶ 21; *see* Doc. 1-1 at 170-179 (the settlement agreement).

The backstory is as follows. In December 2009, when Drenk represented Eckert and Levin represented Steiner, Levin and Eckert began to exchange hundreds of emails. Doc. 1 at ¶ 15; *see* Doc. 1-1 at 2-169 (the emails). On December 9, 2009, Levin wrote to Eckert: "You have a bad case in State Court, no matter what another attorney might tell you. … [A] settlement would make it so that you wouldn't have a judgment (or any lawsuit) against you, making it that much easier (or even possible) to get financing for your business." Doc. 1-1 at 11. Levin promised to help Eckert develop his businesses as a means of raising the $700,000 necessary to satisfy his payment obligation under the proposed settlement. Doc. 1 at ¶ 13; *see* Doc. 1-1 at 9 ("[T]he advisor will build a plan that has a line item for repayment to us while you develop and grow the business. It's a triple win and shuts down all litigation for you.").

During the next two or so years, Levin and Eckert discussed, among other topics, Eckert's business, how to capitalize that business, strategies for raising money to pay what Eckert owed under the settlement agreement, Steiner's lawsuit against Eckert, the legal status of the disagreement between Steiner and Eckert, and enforcement of the settlement agreement.

Doc. 1 at ¶ 16.  Levin introduced Eckert to potential business advisors and investors.  *Id*. at ¶ 20.  Levin also provided Eckert a template for developing a business plan that Levin had created, edited Eckert's business plans, participated in meetings on behalf of Eckert's business, and communicated regularly with Eckert.  *Id*. at ¶ 22.  In correspondence with third parties, Levin referred to Eckert as his "client."  Doc. 1-1 at 103-04.

On February 8, 2011, Steiner and Eckert agreed to alter the terms of the June 2010 settlement agreement.  *Steiner v. Eckert*, 995 N.E.2d 483, 485 (Ill. App. 2013).  On December 12, 2011, Steiner moved to enforce the settlement agreement against Eckert.  Doc. 13-4.  Levin was one of the attorneys of record for Steiner on that motion.  *Id*. at 5.  On December 22, 2011, Eckert moved to disqualify Levin as Steiner's counsel.  Doc. 13-5.  The state trial court denied Eckert's motion in a one-line order dated March 27, 2012.  Doc. 13-6.  Then, on July 12, 2012, the court granted Steiner's motion to enforce the settlement agreement and entered judgment against Eckert in the amount of $1,000,000.  Doc. 13-7.  On November 1, 2012, the trial court denied Eckert's motion to vacate that judgment.  Doc. 13-8.  The Appellate Court of Illinois affirmed, *Steiner v. Eckert*, 995 N.E.2d 483 (Ill. App. 2013), and the Supreme Court of Illinois denied leave to appeal, *Steiner v. Eckert*, 3 N.E.3d 802 (Ill. 2014).

## Discussion

### I.     Fraud Claim

Eckert's fraud claim alleges that Levin fraudulently induced him into executing the settlement agreement by falsely promising to help him raise the funds needed to satisfy his financial obligations under the agreement.  Doc. 1 at ¶¶ 45-50.  Levin argues that this claim is an improper collateral attack on the state court judgment.  Doc. 13 at 11.  Although he does not use

the term, Levin's argument is that res judicata, also called claim preclusion, bars the fraud claim because it rests on allegations that Eckert could have raised in the state court case.

Res judicata "provides for the finality of rulings by barring the relitigation of claims or defenses that had been *or could have been brought* in a prior case." *Smith Trust & Sav. Bank v. Young*, 727 N.E.2d 1042, 1045 (Ill. App. 2000) (emphasis added); *see also Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007); *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 975 (Ill. 2012). Because the underlying judgment was issued by an Illinois state court, its preclusive effect is governed by Illinois law. *See Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996); *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006). In Illinois, res judicata applies if: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998); *see also Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 727-28 (7th Cir. 2014). In addition, the party against whom res judicata is invoked must have had a "full and fair" opportunity to litigate the claim in the prior suit. *Hicks*, 479 F.3d at 471.

The first requirement, a final judgment on the merits, is indisputably satisfied. The state appellate court held that Steiner and Eckert had entered into a valid settlement agreement and affirmed the trial court's enforcement thereof, *see Steiner*, 995 N.E.2d at 489, and the state supreme court denied leave to appeal. The judgment, therefore, constitutes a final judgment on the merits as to the existence, validity, and enforceability of the settlement agreement. *See In re A.W.*, 896 N.E.2d 316, 321 (Ill. 2008) ("finality requires that the potential for appellate review must have been exhausted"); *Relph v. Bd. of Educ. of DePue Unit Sch. Dist. No. 103*, 420 N.E.2d 147, 150 (Ill. 1981).

The second requirement of res judicata, the identity of the cause of action, is satisfied as well. Under the "transactional test" adopted by Illinois, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 703 N.E.2d at 893; *see also Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 558-59 (7th Cir. 2014); *Cooney v. Rossiter*, 986 N.E.2d 618, 622 (Ill. 2012) ("Illinois does not require the same evidence or an identical theory of relief."). What constitutes a "single group of operative facts" is determined pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *River Park*, 703 N.E.2d at 893 (internal quotation marks omitted); *see also Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 637 (7th Cir. 2004); *Torasso v. Standard Outdoor Sales, Inc.*, 626 N.E.2d 225, 228 (Ill. 1993).

Eckert's submission that Steiner's lawyer (Levin) fraudulently induced Eckert to sign the settlement agreement could have been asserted by Eckert in state court as a defense to Steiner's motion to enforce the agreement. Eckert initially did not respond to Steiner's motion to enforce. *See Steiner*, 995 N.E.2d at 486. Eckert later moved to vacate the judgment, arguing that "no valid settlement agreement was shown to exist by either verified pleadings or evidence," and that even if an agreement existed, it "made no sense whatsoever and was completely nonsensical and unenforceable even if valid." *Ibid.* (internal quotation marks omitted). On appeal, Eckert argued that the trial court had abused its discretion by summarily granting Steiner's motion to enter judgment because Steiner "submitted no verified pleadings or evidence to establish the existence

of the settlement agreement" and, alternatively, that the trial court should have held an evidentiary hearing before enforcing the agreement due to its ambiguity. *Id*. at 487.

Eckert's fraudulent inducement claim in this case seeks the same bottom-line result that he sought in state court: a holding that the settlement agreement is invalid and unenforceable. *See Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 726 (7th Cir. 2008) ("the remedy for fraud in the inducement is to rescind the contract"). Eckert could have made a fraudulent inducement argument in state court as a ground for denying Steiner's motion to enforce. *See Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1341-42 (7th Cir. 1992); *Jordan v. Knafel*, 880 N.E.2d 1061, 1071-73 (Ill. App. 2007). It follows that the identity of cause of action requirement is satisfied. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1234 (7th Cir. 1986) ("Illinois courts have consistently held that the bar of *res judicata* extends not only to questions actually decided, but also to all grounds of recovery and defenses which might have been presented in the prior litigation between the parties. … A defendant therefore may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff which if successful would nullify the initial judgment.") (citing cases); *Hughey v. Indus. Comm'n*, 394 N.E.2d 1164, 1166 (Ill. 1979) (holding that res judicata "applies to every question relevant to and falling within the purview of the original action, in respect to matters of both claim or grounds of recovery, and defense, which could have been presented by the exercise of due diligence"); *Lake v. Thomas*, 90 N.E.2d 774, 777 (Ill. 1950) ("The rule is well settled that the doctrine of res judicata extends not only to matters actually determined in the former suit, but also embraces all grounds of recovery and defense involved and which might have been raised."). It also follows for the same reasons

that Eckert had a full and fair opportunity to litigate fraudulent inducement in state court. *See Abner v. Ill. Dep't of Transp.*, 674 F.3d 716, 720 (7th Cir. 2012).

The third requirement of res judicata, the identity of parties or their privies, is satisfied as well. "The rule of privity extends the preclusive effect of *res judicata* to those who were not parties to the original action, if their interests were adequately represented by someone else." *Cooney*, 986 N.E.2d at 625; *see Jackson v. Callan Publ'g, Inc.*, 826 N.E.2d 413, 428 (Ill. App. 2005) (holding that privity exists "where a person is so identified in interest with another that he represents the same legal right."). Eckert was a party in both the state case and this case, so the only question is whether Steiner (Eckert's opponent in the state case) is in privity with Levin (Eckert's opponent here).

The answer to that question is "yes." As Steiner's lawyer, Levin was Steiner's agent in the state case and thus shared the same interests. *See Harrison v. Deere & Co.*, 533 F. App'x 644, 649 (7th Cir. 2013) (holding for purposes of the privity requirement that "[p]arties' interests are often aligned when one party is an agent of the other"); *Garcia*, 360 F.3d at 636 (holding that a principal and its agent were in privity). And even putting aside their attorney-client relationship, Levin and Steiner both have a personal interest in the settlement agreement being held valid and enforceable—Steiner because the agreement resulted in a $1 million judgment in the state court suit, and Levin because it predicates his defense of the malpractice claim in this suit. Levin therefore is in privity with Steiner. *See Ennenga v. Starns*, 677 F.3d 766, 776 (7th Cir. 2012) (finding privity where the federal defendant was the state court defendant's law firm); *Henry*, 808 F.2d at 1235 n.6 ("Even though the Bank was the only actual party to the state court mortgage foreclosure proceedings, the other defendants, as directors, officers, employees, and attorneys of the Bank, are in privity with the Bank for purposes of *res judicata*."); *Purmal v.*

*Robert N. Wadington & Assocs.*, 820 N.E.2d 86, 94 (Ill. App. 2004) ("Privity expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties.") (internal quotation marks omitted).

Because the Illinois court rendered a final judgment on the merits, Eckert could have raised his fraudulent inducement argument as a defense in state court, there is an identity of parties or their privies in the two suits, and Eckert had a full and fair opportunity to raise his fraud argument in state court, res judicata bars Eckert's fraud claim here. Given this disposition, there is no need to address Levin's other arguments for dismissing the claim.

## II. Legal Malpractice Claim

Eckert's legal malpractice claim alleges that he had an attorney-client relationship with Levin and that Levin committed malpractice by, among other things, recommending that Eckert enter into a settlement agreement that did not condition Eckert's payment obligation on Levin's success in helping Eckert raise the money necessary to satisfy that obligation, and ultimately failing to succeed in that respect. Doc. 1 at ¶¶ 40-43. Levin's Rule 12(b)(6) attacks on the malpractice claim fail to persuade.

Again without using the term, Levin contends that the malpractice claim, like the fraud claim, is barred by res judicata. Doc. 13 at 11-13. Unlike the fraud claim, however, the malpractice claim does not satisfy the second requirement of res judicata, identity of cause of action. As an initial matter, the malpractice claim rests in substantial part on events occurring after the settlement agreement was signed in June 2010, such as Levin's obtaining a large judgment against Eckert. *See Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 310-11 (7th Cir. 2010) (holding that res judicata does not apply where the second lawsuit was based

on events that had not occurred at the time of the first lawsuit); *River Park*, 703 N.E.2d at 893. Moreover, the malpractice claim would not have been an effective defense to Steiner's motion to enforce the agreement, as the remedy for legal malpractice is damages, not rescission. *See Bell v. Eastman Kodak Co.*, 214 F.3d 798, 802 (7th Cir. 2000) ("The exclusive remedy for legal malpractice in a civil case … is a suit for malpractice or for breach of fiduciary duty."); *Daniels v. Brennan*, 887 F.2d 783, 788 (7th Cir. 1989) ("The remedy for a client who suffers a dismissal because of the negligence of his attorney is a malpractice action; the remedy is not in avoiding the consequences of the conduct of a freely selected agent.").

Levin also invokes (once again without using the term) collateral estoppel, or issue preclusion, to argue that the state court's denial of Eckert's motion to disqualify him from representing Steiner in state court bars his malpractice claim. Doc. 13 at 11-13. Issue preclusion applies if "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Talarico v. Dunlap*, 685 N.E.2d 325, 328 (Ill. 1997). Further, "a decision on the issue must have been necessary for the judgment in the first litigation, and the person to be bound must have actually litigated the issue in the first suit." *Ibid.*; *see Wells v. Coker*, 707 F.3d 756, 761 (7th Cir. 2013) (stating the four requirements).

Levin's issue preclusion argument fails on at least two grounds. First, the question of Levin's alleged legal malpractice is not "identical" to the question presented by Eckert's motion to disqualify. "Under Illinois law, in order to prevail on a claim of attorney malpractice, a plaintiff must succeed in proving four elements: (1) an attorney-client relationship giving rise to a duty on the attorney's part; (2) a negligent act or omission by the attorney amounting to a

9

breach of that duty; (3) proximate cause establishing that but for the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages." *Mihailovich v. Laatsch*, 359 F.3d 892, 904-05 (7th Cir. 2004). By contrast, "[d]isqualification motions require a two-step analysis. The court must consider (1) whether an ethical violation has actually occurred, and (2) if disqualification is the appropriate remedy." *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). The elements do not overlap, and thus are not identical for preclusion purposes. *See Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 480 (Ill. 2001) ("The fact that plaintiff *had* not proven himself able to come to work on a regular basis is not identical to the questions of whether defendant had accorded plaintiff his rights under the parties' contract and whether he *could*, in the months coinciding with the remedial tenure conferences, rectify his attendance problems."); *Demski v. Mundelein Police Pension Bd.*, 831 N.E.2d 704, 707-08 (Ill. App. 2005) (holding that the question whether a police officer's "accident arose out of and in the course of her employment" is not identical to the question whether the accident occurred during "[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life") (internal quotation marks omitted). Second, the state trial court's one-line order denying Eckert's motion to decertify does not indicate in any way that the court actually found that Levin did not commit malpractice or that any such finding was necessary to the order. Doc. 13-6 at 1; *see Peregrine Fin. Grp., Inc. v. Martinez*, 712 N.E.2d 861, 868 (Ill. App. 1999) ("The party asserting the doctrine of collateral estoppel bears the heavy burden of demonstrating with clarity and certainty what the prior judgment determined.") (internal quotation marks omitted).

Levin next argues that the settlement agreement's nonreliance and release clauses preclude Eckert's malpractice claim. The nonreliance clause provides: "Eckert does hereby

warrant and represent to Steiner that: (a) No promise or representation of any kind whatsoever has been made to Eckert as a basis for entering into this Settlement Agreement other than those made expressly herein; (b) Eckert did not receive and is not relying upon any representations regarding the legality, advisability or potential tax implications of entering into this Settlement Agreement from Steiner, AgriStar or their counsel; (c) Eckert intends that the terms of this Settlement Agreement be valid and enforceable against Eckert ….." Doc. 13-1 at 4-5.  And the release clause provides: ""Immediately upon execution hereof, Eckert [the "*Releasing Party*"] shall, concurrently with the execution of this Settlement Agreement, release and forever discharge Steiner and AgriStar, including their agents, attorneys, successors and assigns [individually, a "*Released Party*;" collectively, the "*Released Parties*"], from any and all claims, whether in law, in equity or statutory, vested or contingent, choate or inchoate, known or unknown, foreseen or unforeseen, that the Releasing Party now have [sic] or hereafter can, shall or may have for, upon, or by reason of any known or unknown matters, cause or thing whatsoever, occurring on or at any time prior to the date of this Settlement Agreement, whether or not asserted on or before the date of this Settlement Agreement, including, but not limited to, any such claims arising out of the conduct of any Released Party in the Adversary Proceeding or in the underlying bankruptcy proceedings …." *Id*. at 4.

Levin cannot use those contractual provisions to defeat Eckert's legal malpractice claim, at least at the pleading stage.  As an initial matter, the release by its own terms applies only to matters "occurring on or at the time prior to the date of th[e] Settlement Agreement."  *Ibid*.  However, as noted above, the complaint alleges malpractice not just with respect to matters predating the June 2010 settlement agreement, but also with respect to matters that occurred afterwards, including Levin's communications and efforts surrounding the financing of Eckert's

11

business—efforts whose failure culminated in the entry of a $1 million judgment against Eckert in June 2012, a judgment procured by Levin himself. Doc. 1 at ¶¶ 1, 13, 16-17, 33, 39-44. Moreover, with respect to matters predating the settlement agreement, Eckert claims that it was Levin's malpractice that caused him to agree to the nonreliance and release clauses (along with the rest of the agreement) in the first place. At least at the pleading stage, with all inferences drawn in Eckert's favor, Levin cannot deploy those ill-gotten clauses to defeat the malpractice claim. *See Bogie v. Rosenberg*, (7th Cir. 2013) (noting that a contract does not defeat a plaintiff's claim where the complaint "alleg[es] that the plaintiff's signature on the attached contract or other instrument was obtained by … coercion"); *cf. Nelson Bros. Prof. Real Estate, LLC v. Freeborn & Peters, LLP*, 773 F.3d 853, 857-58 (7th Cir. 2014) ("A reasonable jury could find that the law firm violated its ethical obligations to the plaintiffs by not warning them of the firm's conflicts of interest, by drafting agreements that reflected favoritism toward Alliance Equities and concealing the favoritism from the plaintiffs (as by not revealing that Alliance Equities would be controlling the below-$50,000 expenditures—which later resulted in the decision to pay the law firm $49,999 owed to the gap lender), and by failing to advise the plaintiffs of the risks to them created by the bad-boy guarantees and the mechanics' liens on the shopping center, and finally by closing the deal for the shopping center without providing for an escrow to cover the liens.").

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted as to Eckert's fraud claim and denied as to his legal malpractice claim. Defendants shall answer the surviving portions of the complaint by March 19, 2015.

February 26, 2015

_____
United States District Judge